RECEIVED
MAY 10 2007
OFFICE OF U.S. DISTRICT JUDGE
BRUCE S. JENKINS

RECEIVED CLERK
FILED
U.S. DISTRICT COURT
MAY 09 2007
2007 MAY -9 P 2:23
U.S. DISTRICT COURT
DISTRICT OF UTAH
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT JUDICIAL DISTRICT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES P. GIBAS,<br><br>Defendant. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF FINAL DISTRIBUTION**<br><br>Civil No. 2:06-cv-100-BSJ<br><br>Judge Bruce S. Jenkins |

This matter comes before the Court on the Receiver's Motion for Order of Distribution dated February 28, 2007, and the Receiver's Application for Approval of Administrative Expenses filed the same date. A hearing was held on Friday, April 20, 2007 at 1:30 p.m. as previously scheduled. The Court then continued the hearing until Friday, May 4, 2007 at 11:00 a.m. The Court having considered the Motions, the supporting Memoranda, and the arguments and evidence presented at the hearings, and for good cause appearing, now hereby ORDERS, ADJUDGES, and DECREES as follows:

## FINDINGS OF FACT

Based upon the Claims filed with the Court and other evidence submitted, the Court now makes the following Findings of Fact:

### A. The Receivership Estate.

1. The undersigned Receiver, Matthew C. Barneck, was duly appointed at a hearing before this Court held May 23, 2006 and by subsequent Order entered May 30, 2006.

2. The same Order granted the Receiver full authority to control the possession and use of the property, to maintain or repair it, and to take all reasonable and necessary actions to appraise, market, and sell it for the best available price.

### B. Sale of the Personal and Real Property.

3. The Receiver has undertaken the sale of the numerous items of personal property held in the Receivership Estate as referenced in previous Orders of the Court (the "**Personal Property**").

4. These efforts include arranging for storage and transportation of the Personal Property, listing the items on various online classified sites, meeting and communicating with many potential buyers, and transferring numerous items to an auction house for public auction.

5. The gross proceeds from the sale of the Personal Property were $41,015. Specific administrative expenses consisting of auctioneer commissions were incurred in the sale of the Personal Property in the amount of $1,712.75. The net proceeds were $39,302.25.

6. Credit Union One had a security interest in two vehicles previously held in the Receivership Estate. Based on Credit Union One's Motion, the Court released those vehicles to Credit Union One which subsequently sold them on its own. Accordingly, the Receivership Estate has no proceeds from the sale of those vehicles.

7. The Receiver also undertook the listing and sale of the real property on Bear Hills Drive in Draper, Utah (the "**House**") as referenced in previous Orders of the Court. Those efforts included arranging for the removal of personal property to prepare the House for sale, arranging for the maintenance of the yard, arranging for utility services for the House and the payment of utility bills, conducting periodic inspections of the House and yard, arranging and paying for appraisals of the House, listing the House for sale, negotiating and communicating regarding offers to purchase the House, and pursuing motions to the Court for approval of the sale.

8. On December 26, 2006, the Court entered an Order Approving the Sale of the House, and on January 18, 2007 the Court entered an Order Confirming the Sale.

9. On January 29, 2007, the Receiver closed on the sale of the House and deposited the funds in a special bank account. The gross sales price for the House was $710,000. Specific administrative expenses associated with the sale of the House consisted of commissions and other closing costs in the amount of $45,181.51. The net proceeds were $664,818.49.

10. The Receiver placed the funds obtained from the sale of the Personal Property and the House in a bank account at First National Bank of Layton. The most recent bank statement shows a balance of $709,041.97 as of March 31, 2007, which includes accrued interest.

C. **The Claims Proceeding.**

11. By its Order Authorizing Claims Proceeding entered August 10, 2006,[1] the Court authorized the Receiver to give notice by mail to all known persons who may have claims upon the property held in this Receivership Estate, and to give notice by publication to all unknown persons.

12. Pursuant to that Order, the Receiver served a Notice of Claims Proceeding in the approved form upon five persons or entities as referenced in Certificates of Service filed August 11, 15 and September 14, 2006.[2] The same Notice was also served by publication.[3]

13. By the bar date of September 29, 2006, the following individuals and entities filed Claims with the Court:

a. Countrywide Home Loans, Inc. ("**Countrywide**")[4]

b. Eckman and Mitchell Construction, LLC ("**Eckman and Mitchell**").[5]

---

[1] Doc. 37.

[2] Docs. 38, 40, and 43.

[3] Doc. 54.

[4] Doc. 42.

[5] Doc. 53.

c. Credit Union One.[6]

14. A Notice of Claims Proceeding was also served upon the following individuals or entities who did not file claims:

a. Ray Patience.

b. Kirsten Ball.

15. In his Memorandum in Support of Motion for Order of Distribution, the Receiver objected to the Claims against the Receivership Estate as follows:

a. To the accrual of interest on Claims after the creation of the Receivership because there are insufficient funds to pay all Claims in full.

b. To the accrual of default interest or penalties from and after the creation of the Receivership because there are insufficient funds to pay all Claims in full.

c. To the payment of attorney fees or costs to any Claimant.

[6] Doc. 50.

## CONCLUSIONS OF LAW

Based upon the foregoing Findings of Fact, the Court now hereby enters the following Conclusions of Law:

**A. Method of Distribution.**

1. The Court has authority in an equity receivership to authorize the sale of property through the Receiver. 3 CLARK, THE LAW AND PRACTICE OF RECEIVERS, §§ 486-487 (1959). The Court has broad powers and wide discretion to determine the appropriate relief to be granted in an equity Receivership. *S.E.C. v. Capital Consultants, LLC, et al.*, 397 F.3d 733, 738 (9th Cir. 2005); *S.E.C. v. Forex Asset Management LLC, et al.*, 242 F3d 325, 331 (5th Cir. 2001); *S.E.C. v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997); *United States v. Vanguard Investment Co., Inc.*, 6 F3d 222, 227 (4th Cir. 1993); *S.E.C. v. Elliott, et al.*, 953 F.2d 1560, 1569-70 (11th Cir. 1992).

2. The basis for this broad deference is that most receiverships involve multiple and complex transactions. *Capital Consultants*, 397 F.3d at 738 (*quoting S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986)). A district court's decision relating to the choice of distribution plan for the receivership estate is reviewed under an abuse of discretion standard. *S.E.C. v. Credit Bancorp. Ltd.*, 290 F.3d 80, 87 (2d Cir. 2002).

3. The Court also has authority to administer a claims proceeding through the Receiver and to require creditors to assert their claims or demands in the Court where the Receiver was appointed. 3 CLARK, THE LAW AND PRACTICE OF RECEIVERS, §646 (1959).

4. The Court concludes that the Receiver's Motion for Order of Distribution should be granted in all respects. Based thereon, the Court makes the following conclusions and order regarding the Claims submitted and the distribution of funds held by the Receiver.

5. The Court concludes that Countrywide has a secured claim on the net proceeds from the sale of the House. Therefore, the proceeds after payment of closing costs and an appropriate share of general administrative expenses shall be paid to Countrywide.

6. Credit Union One had a security interest in two vehicles previously held in the Receivership Estate. Based on Credit Union One's Motion, the Court released those vehicles to Credit Union One, which subsequently sold them on its own. Accordingly, the Receivership Estate has no proceeds from the sale of the vehicles, and the Court concludes no payment shall be made to Credit Union One.

7. Eckman and Mitchell filed a Proof of Claim seeking to recover monies taken through criminal conduct which the United States alleged against James P. Gibas. In a separate criminal proceeding styled *United States v. James P. Gibas*, 2:06-cr-00257 TS, a Judgment in a Criminal Case was entered which included an Order of Restitution.

8. Accordingly, the Court finds that the proceeds of all Personal Property sold by the Receiver, after payment of sales expenses and an appropriate share of general administrative expenses, shall be paid to or on behalf of Eckman and Mitchell.

**B. Administrative Expenses.**

9. The Receiver's Verified Application for Approval of Administrative Expenses was filed February 28, 2007 in conjunction with the Motion for Order of Distribution.

10. The Court hereby grants the Receiver's Application for Order Approving Administrative Expenses, and authorizes the payment of $52,913.86 to the Receiver's counsel Richards, Brandt, Miller & Nelson ("**RBMN**") as general administrative expenses. The Court denies the Receiver's request to augment the amount of the Application.

11. The Court finds that administrative expenses enjoy a priority status and should be paid from the Receivership Estate before making distributions to Claimants. Accordingly, the Receiver should first make payment to the Receiver's counsel in the amount stated above.

12. The Court approves the specific administrative expenses associated with the sale of the House, and those associated with the sale of the Personal Property, in the amounts set forth in the Receiver's Verified Application for Approval of Administrative Expenses.

13. The Court concludes that the specific administrative expenses from the sale of the House should be borne by Countrywide's Claim, such that the net proceeds from the sale of the House should be paid to Countrywide less a share of general administrative expenses.

14. The Court concludes that the specific administrative expenses from the sale of the Personal Property should be borne by Eckman and Mitchell's Claim, such that the net proceeds from the sale of the Personal Property should be paid to or for the benefit of Eckman and Mitchell less a share of general administrative expenses.

**C. Amounts of Claims.**

15. Based on the foregoing, the Court concludes that Countrywide's Claim should be allowed in the amount of $843,387.05. The Claim would be otherwise reduced to exclude the approximate amount of interest, late fees accruing after the creation of the Receivership Estate, and attorney fees. However, the Court concludes such a reduction is unnecessary because the net proceeds from the sale of the House will be insufficient to pay in full even the principal amount of Countrywide's Claim. Therefore, after subtracting specific administrative expenses and a share of general administrative expenses, the remaining proceeds from the sale of the House should be paid to Countrywide.

16. The Court concludes that the Claim of Eckman and Mitchell should be allowed in the amount of $783,535.68. The Claim would be otherwise reduced to exclude any amount of interest, late fees, and attorney fees included in the Claim. However, the Court concludes such a reduction is unnecessary because the net proceeds from the sale of the Personal Property will be insufficient to pay in full even the principal amount of Eckman and Mitchell's Claim. Therefore, after subtracting specific administrative expenses and a share of general administrative expenses, the

remaining proceeds from the sale of Personal Property should be paid to or for the benefit of Eckman and Mitchell.

17. By Order entered October 2, 2006, the Court granted Credit Union One's motion for release of secured collateral, and the two vehicles subject to its lien were released to Credit Union One. Because there are no proceeds from the sale of those vehicles, the Court concludes no payment should be made to Credit Union One.

**D. Amounts of Distribution**.

18. The Court concludes that administrative expenses payable to the Receiver are general administrative expenses which should be borne by the Claims in proportion to the relative costs of liquidating the House and the Personal Property, respectively. The proportions below are based upon evidence received at the hearing held May 4, 2007.

19. Accordingly, in addition to administrative expenses specifically associated with the sale of the House, 40.2367% or $21,290.81 of the general administrative expenses shall be deducted from the proceeds of the House before payment to Countrywide.

20. Likewise, after deducting expenses specifically associated with the sale of the Personal Property, 59.7633% or $31,623.05 of general administrative expenses shall be deducted from the proceeds of the Personal Property before payment to or on behalf of Eckman and Mitchell.

21. The Court finds that the balance of funds in the Receiver's account is $709,041.97 as of March 31, 2007.

22. Accordingly, the Court concludes that the Receiver should make payment to Countrywide Home Loans, Inc. as follows: $710,000 (total sales price) – $45,181.51 (commissions and closing costs) – $21,290.81 (percentage of general administrative expenses) = $643,527.68, plus a share of interest accruing in the Receiver's account as described below.

23. The Court further concludes that the Receiver should make payment to the United States of America on behalf of Eckman and Mitchell Construction, LLC as follows: $41,015 (gross sales proceeds) – $1,712.75 (sales expenses) – $31,623.05 (percentage of general administrative expenses) = $7,679.20, plus a share of interest accruing in the Receiver's account as described below.

24. Interest that accrued in the Receiver's account through the end of January 2007, in the amount of $364.93, should be paid to or on behalf of Eckman & Mitchell because only the proceeds of the Personal Property were held in the account through that date. Interest accruing from February 1, 2007 through the date of distribution should be paid 98.8208% to Countrywide and 1.1792% to Eckman and Mitchell, which are the proportions of their total distributions not counting interest.

**ORDER OF DISTRIBUTION**

Based upon the foregoing Findings of Fact and Conclusions of Law, and for good cause appearing, the Court now hereby ORDERS that the net proceeds from the sale of the Personal

Property and the House in this Receivership Estate shall be distributed consistent with the foregoing Conclusions of Law.

Specifically, the Receiver is hereby ordered to pay to Countrywide Home Loans, Inc. the sum of $710,000.00 – $45,181.51 – $21,290.81 = $643,527.68, plus a share of interest accruing in the Receiver's account through the date of distribution as described in paragraph 24 above.

The Receiver also is ordered to pay to or for the benefit of Eckman and Mitchell the sum of $41,015.00 – $1,712.75– $31,623.05 = $7,679.20, plus a share of interest accruing in the Receiver's account through the date of distribution as described in paragraph 24 above.

The Court further directs the Receiver to submit a final status report declaring that distributions have been made in accordance with this Order. With the filing of that report, the Receiver's duties under the Order Appointing Receiver entered May 30, 2006, and under any subsequent Order of this Court, are fully discharged and the Receiver is thereafter relieved of any further responsibilities in this matter. Based thereon, the Court orders that this case thereafter shall be closed.

IT IS SO ORDERED

DATED this 11 day of May, 2007.

BY THE COURT:

HONORABLE BRUCE S. JENKINS
UNITED STATES DISTRICT COURT JUDGE

APPROVED AS TO FORM:

UNITED STATES ATTORNEY'S OFFICE

D. LOREN WASHBURN
*Attorneys for the United States of America*

MATHESON MORTENSEN OLSEN
& JEPPSON

ARMAND J. HOWELL
*Attorneys for Countrywide Home Loans*

BLACKBURN & STOLL, LC

ERIC L. ROBINSON
*Attorneys for Eckman and Mitchell Construction, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was mailed, first-class, postage prepaid, on this 4 day of May, 2007, to the following:

D. Loren Washburn, Esq.
Jeannette F. Swent, Esq.
UNITED STATES ATTORNEY'S OFFICE
185 South State, #400
Salt Lake City, UT 84111
*Attorneys for the United States of America*

Gregory V. Stewart, Esq.
DEXTER & DEXTER
University Office Park
1360 South 740 East
Orem, UT 84097-8081
*Attorneys for Defendant*

Armand J. Howell, Esq.
MATHESON MORTENSEN OLSEN & JEPPSON
648 East 100 South
Salt Lake City, UT 84102
*Attorneys for Countrywide Home Loans*

Darwin H. Bingham, Esq.
William G. Wilson, Esq.
SCALLEY READING BATES HANSEN & RASMUSSEN
15 West South Temple, Suite 600
P.O. Box 11429
Salt Lake City, UT 84147-0429
*Attorneys for Credit Union One*

**AND**

I hereby certify that I have mailed by United States Postal Service, the foregoing document to the following non-CM/ECF participants:

Eric L. Robinson, Esq.
BLACKBURN & STOLL, LC
257 East 200 South, Suite 800
Salt Lake City, UT 84111-2048
*Attorneys for Eckman and Mitchell Construction, LLC*

MATTHEW C. BARNECK

G:\EDSI\DOCS\16953\0001\IR0557.WPD